FRANCIS FISK & others *vs.* EXPERIENCE C. FISK.

In a real action it is irregular for the tenant to plead the general issue as to one moiety of the demanded premises and a disclaimer as to the other. The general issue should be pleaded as to the whole demand, and a disclaimer as to part filed by way of a specification of defence.

But if the tenant does so plead irregularly, and no objection is raised by the demandant, and at the trial the latter proves a deed from the former to himself of one half of the premises claimed, this is not evidence of title in him to the whole.

Proof of two deeds from the tenant to the demandant, each of an undivided half of premises, the whole of which is demanded, although made at different times, does not shift the burden of proof upon the tenant to show that the two deeds

do not refer to different portions; but the burden is still on the demandant to prove a title to the whole premises demanded. And parol evidence is competent for the tenant to show that the second deed was, by agreement of the parties thereto, merely a substitute for the first deed, on account of some real or supposed defect therein.

This action was tried in this court before *Fletcher*, J., at September term, 1852, under whose rulings a verdict was given for the tenant, and the demandants excepted to the rulings. At the argument in Boston, January 11, 1854, the demandants also moved for a new trial, on the ground of newly discovered evidence. The whole case sufficiently appears in the opinion.

*C. P. Huntington*, for the demandants.

*C. Allen & G. T. Davis*, for the tenant.

SHAW, C. J. This was a real action to recover the whole of several parcels of land in Warwick, known as the Penniman Farm. The plaintiffs are the children, heirs, and devisees of Elijah Fisk, deceased; the defendant is the legatee and widow, having been a second wife of the deceased, and not the mother of the plaintiffs. The defendant, as to one undivided moiety, pleaded the general issue, on which issue was joined; and, as to the other, a disclaimer. We are inclined to think that this mode of pleading was an irregularity; that, as the statute now stands, the general issue should have been pleaded to the whole demand, and the disclaimer filed by way of specification of defence, under the general issue. It would be no objection to such notice of defence, that it assumed the form of a plea of disclaimer. But this was an irregularity which could not affect the merits of the case; had it been excepted to at the trial, the plea might have easily been amended so as to extend to the whole and not to a moiety only. But no advantage can be taken of it now.

The plaintiffs offered in evidence a deed dated April 14, 1825, made by the defendant, when a *feme sole*, and before her marriage with the deceased, of one half of the farm, which was admitted without objection. Hereupon the plaintiffs' counsel claimed that, as the defendant had disclaimed one moiety, and they had proved a title to another moiety, there

was *primâ facie* evidence of title to the whole. The court said no; the plaintiffs must prove title to the whole; the defendant disclaims the half; proving title to half only proves what the defendant admits; and therefore the matter in issue, which it is incumbent on the plaintiff to prove, is not established. This decision was, we think, correct. If there was any difficulty, it was in the irregularity of the plea already alluded to, and the issue joined, and not in the proof. But the exception, and that to which the decision of the court applied, was to the proof and not to the plea.

To establish their title to the other moiety, the plaintiffs offered the office copy, together with the record, of another deed, given by the defendant, while sole, to said Elijah, bearing the same date with the former, April 19, 1825, and in the same terms with the other, that is, of a moiety. But the signature to this deed on the registrar's book was cancelled, and nearly obliterated; and it appears that the same cancellation appeared on the original, which seems to have been produced, but the report does not state by which party. Upon the defendant's objection, the court ruled that, as this deed appeared on the face of it cancelled, it was not competent evidence to go to the jury, as the defendant's deed, without explanation. Evidence was then given bearing upon this question, and, amongst other things, that this cancelled deed, though bearing the same date with the former, was actually executed and delivered in 1828, shortly before the marriage of the defendant with said Fisk. Upon this evidence, the defendant insisted that the mutilated deed was cancelled by mutual consent, in consequence of some real or supposed errors,. and that it was intended that the unmutilated deed should be dated back, to stand in place of the cancelled deed, as evidence of title; and, therefore, was a confirmation and ratification of the same title to the same moiety, and could not operate to convey another and a distinct moiety. Upon this, the plaintiffs contended that the deed, not being mutilated till 1828, and possession and occupation under it having been held by Fisk, a title was thus established to the whole farm; so that the general burden of proof was shifted and

placed on the defendant to disprove the plaintiffs' title ; which she could do, only by proving and establishing affirmatively that the undisputed deed was merely a substitute for the mutilated deed.   But as it did not appear that the second deed was delivered until the former was mutilated and cancelled, and as there was nothing to show that Elijah Fisk had any other possession and occupation than he might have had as tenant in common, and as the defendant's evidence went only to negative the claim of title to the whole farm as set up by the plaintiffs, the court ruled that there was nothing in the facts to change the burden of proof from the plaintiffs to the defendant.

It is now insisted that this decision was incorrect; but it appears to us otherwise, and that it was right.   The plaintiffs had the burden of proving that Elijah Fisk died seised of the whole estate.   This they attempted, and offered to do, by producing two deeds, each of a moiety ; and if these were of two distinct halves, they would make the whole, and thus they would maintain the issue.   But if, as the defendant insisted, each related to the same moiety, and, by agreement, one was substituted for the other, as a confirmation, or to correct a mistake, then both related to the same moiety, as by their terms they might do ; and so only one moiety was vested in the testator, and the plaintiffs failed to prove title to the whole. The question in issue was, upon all the proof, whether the two deeds conveyed the same moiety or distinct moieties ; and it was for the plaintiffs to establish the point, that they conveyed distinct moieties.   Of course, the burden was on them on this point.   Had there been proof that, by any conveyance, the whole had been conveyed and vested in the grantee, and that afterwards, upon the discovering of a mistake, — on proof, for instance, that the intention was to convey a half, when the grantor had accidentally signed a deed for the whole, — and, to correct this mistake, the grantee had executed a deed back of a moiety, the burden would undoubtedly be on the party claiming under the deed back, to prove its execution and delivery.

The fallacy of the argument for the plaintiffs, if there be

one, we think is this, that the mutilated deed conveyed one moiety, of which the deceased became seised, and that the other, though dated back, yet being made and delivered afterwards, did convey the other moiety, and made title to the whole. This was the only question in issue; the ground taken by the defendant, which, if not sustained, her defence would entirely fail, was, that the second deed, though actually executed and delivered at a later day, was dated back so as to conform to the date of the former, which was cancelled by consent at the same time; and that this manifested an intent that both should not be outstanding at the same time as distinct conveyances, and therefore, that each related to the same moiety. Each was, in terms, for a moiety; this was equivocal; it might be the same, or different. It was a latent ambiguity. There was nothing ambiguous on the face of either. It was when both were produced, one whole, and one mutilated, whether they related to the same or different moieties; and this let in evidence *aliunde*, according to the well-known rule. If the evidence proved that they related to different moieties, the case was with the plaintiffs on the issue; they had the burden, and sustained it. If it proved that they related to the same moiety, it rebutted the proof offered by the plaintiffs effectually, and the effect was, that one moiety only passed and vested in the ancestor; and, as to the other half, the plaintiffs had the burden, but, *pro tanto*, failed of sustaining it.

There was one point brought to the attention of the court, and we have thought it deserving of consideration. When the mutilated deed was produced, and the plaintiffs, under the circumstances, were required to give evidence to show how, when, and under what circumstances the cancellation took place, and evidence was offered to show that, though bearing the same date, the unmutilated deed was executed and delivered at a different time, which proof is admissible, under a well-defined exception to the rule excluding parol evidence to vary or alter a deed, the court ruled that it was competent to show that the two deeds related to and conveyed the same moiety, and that the defendant could be permitted to

show such substitution by parol evidence, in connection with that resulting from the inspection of the deeds themselves. The objection is, that the court thus allowed parol evidence to prove that the parties intended something different from what their deeds imported. But we do not so understand it. The plaintiffs were allowed to go into evidence to explain the mutilation of one of their deeds, with a view to show that both were intended to be in force and operation at the same time; the defendant, surely, would be entitled to go into parol evidence, to rebut, explain, and control the evidence thus offered on the other side. When the court said she could be permitted to show the substitution of the one deed for the other, we understand it as determining that some facts might be shown by parol evidence, which show acts tending to that result. It is not stated what evidence was given under this permission, or that any was objected to. The objection is not to any particular evidence, but to the decision that any parol evidence could be given. As we think it was competent, on such issue, to give parol evidence of some kinds, and it does not appear that, under this permission, any incompetent evidence was given, the verdict cannot be set aside on that ground.

On the motion for a new trial, on the ground of newly discovered evidence, we think the proof offered by the plaintiffs, if it *were* before the jury, could have no appreciable bearing on the issue; even if the admissions of a married woman against her own title, and in favor of her husband's, would be competent.

*Exceptions overruled. Motion for a new trial overruled.*